Shareef S. Farag, SBN 251650
*sfarag@bakerlaw.com*
Vartan S. Madoyan, SBN 279015
*vmadoyan@bakerlaw.com*
Vivian Y. Shen, SBN 315734
*vshen@bakerlaw.com*
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA 90025-0509
Telephone:  310.820.8800
Facsimile:   310.820.8859

*Attorneys for Defendant*
IKEA DISTRIBUTION SERVICES, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEATRIZ RAMIREZ, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>VOLT MANAGEMENT CORP.; IKEA DISTRIBUTION SERVICES, INC.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.<br><br>**NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**<br><br>*[Filed concurrently with Civil Cover Sheet; and Disclosure Statement]*<br><br><br>Action Removed: February 1, 2022<br>Action Filed:       November 16, 2021 |

1

**TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, defendant IKEA DISTRIBUTION SERVICES, INC. ("IKEA") removes the above-entitled action filed by Plaintiff BEATRIZ RAMIREZ ("Plaintiff") in the Superior Court of the State of California for the County of Kern, Case No. BCV-21-102735, to the United States District Court for the Eastern District of California. IKEA appears for the purpose of removal only and for no other purposes whatsoever, and reserves all rights, claims and defenses of any nature whatsoever.

## JURISDICTION AND VENUE

1. This is a civil action over which this Court has original subject matter jurisdiction under 28 U.S.C. § 1332, and removal is proper pursuant to 28 U.S.C. §§ 1441 and 1446 because it is a civil action that satisfies the requirements stated in the Class Action Fairness Act of 2005 ("CAFA"), codified in part at 28 U.S.C. § 1332(d).

2. This Court is in the judicial district and division embracing the place where the state court action was brought and is pending. Specifically, the United States District Court for the Eastern District of California embraces Kern County. Thus, this Court is the district court to which this case is properly removed. *See* 28 U.S.C. §§ 1441(a) and 1446(a).

## THE ACTION & TIMELINESS OF REMOVAL
## PROCEDURAL BACKGROUND

3. On or about November 16, 2021, Plaintiff commenced this action against Defendants Volt Management Corp. and IKEA (collectively, "Defendants") by filing a complaint styled as a class action (the "Complaint") in the Superior Court of California, County of Kern, entitled *Beatriz Ramirez v. Volt Management Corp., et al.*, Case No. BCV-21-102735.

4. On January 3, 2022, IKEA was served with a copy of the Summons and Complaint. **Exhibit "A"** constitutes all process, pleadings, and orders served on IKEA in this action.

5. Under 28 U.S.C. § 1446(b), this Notice of Removal is timely filed, as the Notice is being filed within 30 days of service of the Summons and Complaint on IKEA in this action.

6. IKEA filed its answer to the Complaint on January 31, 2022. **Exhibit "B"** is a copy of the Answer filed by IKEA.

## CAFA JURISDICTION

7.  **Basis of Original Jurisdiction**.  This Court has original jurisdiction of this action under CAFA. 28 U.S.C. § 1332(d)(2) and (5) provide that a district court shall have original jurisdiction over a class action with one hundred (100) or more putative class members, in which the matter in controversy, in the aggregate, exceeds the sum or value of $5,000,000.  Section 1332(d)(2) further provides that any member of the putative class must be a citizen of a state different from any defendant.

8.  As set forth below, this is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1332(d) because it is a civil action filed as a class action involving more than 100 members; the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, based on the allegations that Plaintiff set forth in the Complaint; Plaintiff and IKEA are citizens of different states; and no defendant is a state, state official, or government entity.

## DIVERSITY OF CITIZENSHIP

9.  CAFA's diversity requirement is satisfied when any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2). The citizenship of the parties is determined by their citizenship status at the action's commencement. *See Mann v. City of Tucson*, 782 F. 2d 790, 794 (9th Cir. 1986).  As the Ninth Circuit recently held, "[a] party's allegation of minimal diversity may be based on 'information and belief.' [citations omitted] The pleading 'need not contain evidentiary submissions.'" *Ehrman v. Cox Communications*, 932 F.3d 1223, 1227 (9th Cir. 2019) *2 (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014)).

10.  **Plaintiff's Citizenship**. For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Warner-Lambert Co.*, 265 F.3d 853 (9th Cir. 2001). Residence is *prima facie* evidence of domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 886 (9th Cir. 2013).  "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kantor*, *supra*, at 857.

11.  The Complaint alleges, "[a]t all times mentioned herein, the currently named Plaintiff is and was a resident of California and was employed by Defendants in the State of

California within the four (4) years prior to the filing of this Complaint." Compl. ¶ 3. As such, IKEA is informed and believes that Plaintiff, at the time of the filing of the action was, and still is, a resident of the State of California.

12. **Citizenship of IKEA**. Pursuant to 28 U.S.C. § 1332(c), "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Further, the United States Supreme Court has concluded that a corporation's "principal place of business" is "where a corporation's officers direct, control, and coordinate the corporation's activities," or its "nerve center." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "[I]n practice," a corporation's "nerve center" should "normally be the place where the corporation maintains its headquarters." *Id*.

13. IKEA is now, and at the time this action commenced was, a corporation formed under the laws of the State of Delaware. Pursuant to the *Hertz* nerve center test, the principal place of business of IKEA is in Pennsylvania, located at its corporate headquarters at 420 Alan Wood Road, Conshohocken, Pennsylvania 19428, where the majority of its officers direct, control, and coordinate its corporate activities. Accordingly, for purposes of diversity jurisdiction, IKEA is, and at all relevant times has been, a citizen of the States of Delaware and Pennsylvania.

14. **Doe Defendants**. Although Plaintiff has also named fictitious defendants "DOES 1 through 100," the presence of Doe defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded."); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1213 (9th Cir. 1980) (unnamed defendants need not join in the removal petition). Thus, the existence of Doe defendants 1 through 100 does not deprive this Court of jurisdiction.

15. **Minimal Diversity**. IKEA has met the minimal diversity of citizenship required by CAFA, inasmuch as Plaintiff, a member of the putative class, is a citizen of California and IKEA is a citizen of Delaware and Pennsylvania. *See* 28 U.S.C. § 1332(d)(2).

16. **Size of the Putative Class**. CAFA provides that the district courts shall not have jurisdiction over actions "where the number of members of all proposed plaintiff classes in the

aggregate is less than 100." 28 U.S.C. § 1332(d)(5).  Here, Plaintiff has alleged and seeks to serve as a class representative of the following putative class: "All current and former hourly non-exempt employees employed by Defendants in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class." Compl. ¶ 41.

17.  Four years prior to Plaintiff's filing of the Complaint is November 16, 2017.  During this time period, IKEA employed at least 1,097 individuals as hourly, non-exempt employees in the State of California. Therefore, per the Complaint allegations, the putative class size is at least 1,097.

## AMOUNT IN CONTROVERSY UNDER CAFA

18.  Removal is appropriate when it is more likely than not that the amount in controversy exceeds the jurisdictional requirement.  Here, that amount is $5,000,000, in the aggregate. *See, e.g.*, *Cohn v. PetsMart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002).  In determining whether the amount in controversy exceeds $5,000,000, the Court must presume Plaintiff will prevail on each and every one of her claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002), citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability") and *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").

19.  Here, Plaintiff does not specifically allege any amount of damages or recoverable penalties in the Complaint, nor does she allege that the aggregate amount in controversy is less than $5,000,000.  Therefore, IKEA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 84 (holding defendants need not submit "evidence" establishing CAFA jurisdiction in their removal papers; rather, defendants only need to provide "a short and plain statement of the grounds for removal"); *see also Al-Najjar v. Kindred Healthcare Operating, Inc.*, No. CV 17-6166 PSG (FFMx), 2017 WL 4862067, at *2 (C.D. Cal. Oct. 26, 2017).

20. Plaintiff's Complaint pleads causes of action for: (1) Failure to pay minimum wage for all hours worked in violation of California Labor Code §§ 1194 and 1197; (2) Failure to pay overtime wages for daily overtime worked in violation of California Labor Code §§ 510 and 1194; (3) Failure to provide meal periods in violation of California Labor Code §§ 512 and 226.7; (4) Failure to provide rest periods in violation of California Labor Code § 226.7; (5) Failure to timely pay earned wages during employment in violation of California Labor Code § 204; (6) Failure to provide complete and accurate wage statements in violation of California Labor Code § 226; (7) Failure to timely pay all earned wages at time of separation of employment in violation of California Labor Code §§ 201, 202, and 203; and (8) Unfair Business Practices in Violation of California Business & Professions Code § 17200, *et seq*. *See* Compl. p.1.

21. Plaintiff's prayer for relief seeks an award of unpaid wages, actual damages, liquidated damages, restitution, declaratory relief, pre-judgment interest, statutory penalties, costs of suit, reasonable attorneys' fees, and "[s]uch other relief as the Court deems just and proper." *See* Compl. pp. 22-27, Prayer for Relief.

22. **Amount in Controversy**. Without conceding that Plaintiff or the putative class members are entitled to or could recover damages in the amount or manner alleged, or at all, the amount in controversy in this putative class action conservatively exceeds $5,000,000, exclusive of interest and costs.[1]

### A.   Claims No. 1 and 2: Failure to Pay Minimum and Overtime Wages

23. Plaintiff's first cause of action for failure to pay minimum wage and second cause of action for failure to pay overtime wages both allege that "Defendants employed policies, practices, and/or procedures including, but not limited to: (a) Since the outbreak of COVID-19, requiring Plaintiff and the Minimum Wage Class to arrive prior to the start of their shift in order to line up to wait to undergo and undergo off-the-clock temperature checks and complete medical questionnaires subject to the control of Defendants, but prior to being permitted to clock in for the

---

[1] This Notice does not concede and should not be construed as evidence that IKEA violated the legal rights of Plaintiff or any putative class members. The argument and the calculations of potential damages presented here are based on the allegations in the Complaint and solely for purposes of this Notice.

start of their shifts; and (b) Requiring Plaintiff and the [putative class members] to travel to and from a designated area to take lunch while they were off-the-clock during their meal breaks without being paid for that time." Compl. ¶¶ 47, 56. Plaintiff further alleges that "[a]s a result of Defendants' unlawful conduct, Plaintiff and [the putative class members] have suffered damages … to the extent that they were not paid wages at a minimum wage rate for all hours worked" and "to the extent that they were not paid at their overtime rate of pay for all hours worked which constitute overtime." *Id.* at ¶¶ 48, 58.

24. Based on these allegations, Plaintiff, on behalf of herself and the putative class, seeks to recover "unpaid minimum wage, interest thereon, liquidated damages in the amount of their unpaid minimum wage", "the full amount of their unpaid overtime wages, prejudgment interest, and attorneys' fees and costs." *Id.* at ¶¶ 49, 59.

25. During the period of November 16, 2017 to the present, at least 1,097 putative class members worked approximately 177,624 workweeks in total. The putative class typically worked full-time schedules and regularly worked at least 8 hours per day and were provided with at least one meal break per day. The average hourly rate of pay among this group is approximately $18.32.

26. Assuming, for purposes of this removal only, that each putative class member worked 15 minutes (or 0.25 hour) of unpaid overtime per week travelling to and from designated meal break areas, the amount in controversy for these claims, exclusive of liquidated damages for Plaintiff's minimum wage claim, is approximately **$1,219,948.76** (calculated as: 0.25 hour of overtime per week × 177,624 workweeks × $18.32 per hour x 1.5 overtime factor). This calculation is based on the assumption that the putative class members, on average, worked approximately 3 minutes of overtime per day off the clock. This assumption is extremely conservative in light of Plaintiff's allegations because putative class members typically worked 40 hours per week, and therefore, any additional off-the-clock time they spent traveling to and from their work areas and break areas would have constituted overtime. Similarly, any additional off-the-clock time the putative class members spent waiting in line for, and undergoing, COVID-related screening during the last 2 years of the putative class period would have only constituted additional off-the-clock overtime.

**B.     Claims No. 3 and No. 4: Failure to Provide Meal and Rest Periods.**

27.     Plaintiff's third cause of action for failure to provide meal periods alleges that "Defendants required Plaintiff and similarly situated employees to travel to and from a designated area to take lunch while they were off-the-clock during their meal breaks rendering their meal breaks less than the required 30 mintues [*sic*] and/or not duty-free as required. Significantly, Defendants did not extend or otherwise elongate Plaintiff's and/or similarly situated employees' meal breaks beyond 30 mintues [*sic*] to account for the travel time and ensure they received the required 30-mintues [*sic*] and Defendants' continued exercise [of] control over how and/or where Plaintiff and similarly situated employees could take their meal breaks rendered them on-duty. For these reasons, Defendants failed to provide Plaintiff and similarly situated employees duty-free 30-mintue [sic] meal breaks." Compl. ¶ 26.  Plaintiff further alleges that "Defendants failed to pay Plaintiff and similarly situated employees a meal period premium wage of one (l) additional hour of pay at their regular rate of compensation for each workday the employees did not receive all legally required and/or legally compliant meal periods, [and] … employed policies and procedures which ensured that employees did not receive any meal period premium wages to compensate them for workdays in which they did not receive all legally required and compliant meal periods." *Id.* at ¶ 27. Finally, Plaintiff alleges that the "aforementioned policies, practices, and/or procedures of Defendants resulted in Plaintiff and similarly situated employees not being provided with all legally required and/or compliant meal periods and/or not receiving premium wages to compensate them for such instances, all in violation of California law." *Id.* at ¶ 29.

28.     In support of her fourth cause of action for failure to provide rest periods, Plaintiff alleges that "Plaintiff and similarly situated employees regularly worked shifts of more than three-and-a-half (3.5) hours; Nevertheless, Defendants employed policies, practices, and/or procedures that resulted in their failure to authorize or permit all legally required and compliant rest periods to Plaintiff and similarly situated employees. Such policies, practices, and/or procedures included, but were not limited to failing to provide Plaintiff and similarly situated employees a third uninterrupted duty-free rest period of a net ten (10) minutes when they worked more than 10 hours in a workday." Compl. ¶ 31. Plaintiff further alleges that "Defendants employed policies and procedures which

ensured that employees did not receive any rest period premium wages to compensate them for workdays in which they did not receive all legally required and compliant rest periods." *Id.* at ¶ 33.

29. Based on these allegations, Plaintiff, on behalf of herself and the putative class, seeks to recover unpaid meal and rest period premiums, as well as interest thereon. Compl. ¶¶ 67, 75. Under California Labor Code § 226.7, non-exempt employees who are not provided with meal or rest periods are entitled to one hour of premium pay for each day that a meal or rest period is not provided.

30. Since November 16, 2017 to the present, at least 1,097 putative class members worked a total of approximately 177,624 workweeks. The putative class typically worked full-time schedules and regularly worked at least 8 hours per shift. The average hourly rate of pay among this group is approximately $18.32.

31. Assuming for purposes of this removal only a 20% violation rate for Plaintiff's meal break violation claim, the amount in controversy for Plaintiff's meal period claim is at least **$3,253,196.70** (calculated as: $18.32 average hourly rate × 177,624 workweeks since November 16, 2017 × 20% violation rate). Assuming a 10% rest break violation rate, the amount in controversy for Plaintiff's **rest period claim** is at least **$1,626,598.35** (calculated as: $18.32 average hourly rate × 177,624 workweeks since November 16, 2017).

32. The above assumptions are very conservative because Plaintiff's unqualified allegations of "policies, practices, and/or procedures" of failing to provide meal and rest periods reasonably justify a violation rate of at least 25%. *See Avila v. Rue21, Inc.*, 432 F.Supp.3d 1175, 1189 (E.D. Cal. 2020) ("[d]istrict courts have found . . . that violation rates of 25% to 60% can be reasonably assumed as a matter of law based on 'pattern and practice' allegation[s]."); *Bryant v. NCR Corporation*, 284 F.Supp.3d 1147, 1151 (S.D. Cal. 2018) (finding reasonable a meal break violation rate of 60% — 3 meal break violations a week, and a rest break violation rate of 30% — 3 rest break violations every other week); *Mariscal v. Arizona Tile, LLC*, 2021 WL 1400892, at *3 (C.D. Cal. April 14, 2021) (finding assumed 25% violation rate "conservative and reasonable"); *Alvarez v. Office Depot, Inc.*, 2017 WL 5952181, at *3 (C.D. Cal. 2017); *see also Mejia v. DHL*

*Express (USA), Inc.*, 2015 WL 2452755, at *4 (C.D. Cal. May 21, 2015) (finding allegations of "uniform policies, practices and procedures" allowed for a 100% violation rate).

### C. Claim No. 7: Waiting Time Penalties

33. For purposes of Plaintiff's seventh cause of action for failure to pay final wages ("waiting time penalties"), Plaintiff seeks to represent a subclass of putative class members who did not receive timely payment of all unpaid wages upon separation of employment during the period from three years prior to Plaintiff's filing of the initial Complaint through the present ("Waiting Time Class"). Compl. ¶ 41.G. In support of her claim for waiting time penalties, Plaintiff alleges that "Defendants had the ability to pay all wages earned by hourly workers prior to separation of employment in accordance with Labor Code sections 201 and 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code sections 201 and 202. Defendants' practices include failing to pay minimum wages, overtime wages, meal period premium wages, and/or rest period premium wages. When Defendants failed to pay members of the Waiting Time Class all earned wages timely upon separation of employment, they knew what they were doing and intended to do what they did." *Id.* at ¶ 97.

34. Based on these allegations, Plaintiff, on behalf of herself and putative class members, seeks waiting time penalties in the amount of "continuation of their wages, from the day their earned and unpaid wages were due until paid, up to a maximum of thirty (30) days", as well as interest thereon. *Id.* at ¶¶ 99, 102. The applicable statute of limitations for penalties under Labor Code § 203 is three years. *See Montecino v. Spherion Corp.*, 427 F. Supp. 2d 965, 967 (N.D. Cal. 2006).

35. During the applicable time period of November 16, 2018 to the present, at least 211 putative class members have separated from their employment with IKEA. These putative class members typically worked full-time schedules and regularly worked at least 8 hours per shift, 40 hours per week. The average final rate of pay among this group is approximately $16.93 per hour.

36. Accordingly, the amount in controversy for this claim would be approximately **$857,510.40** (calculated as: 211 separated employees × 8 hours per day × 30 days × $16.93 per hour average final rate of pay). These assumptions are reasonable in light of the fact that Plaintiff

seeks maximum stator penalty of 30 days' wage continuation and because her waiting time penalties claim is completely derivative of her claims for unpaid wages, unpaid overtime, and missed meal and rest periods, each of which asserts widespread violations. See *Avila*, supra, 432 F. Supp. 3d at 1188 ("Because Plaintiff is asking for a maximum statutory penalty of 30 days, … it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal*, 2021 WL 1400892, at *3 (same).

### D.     Attorneys' Fees

37.     Furthermore, Plaintiff seeks an unspecified amount of reasonable attorneys' fees in connection with Plaintiff's causes of action for unpaid minimum wage and unpaid overtime wages. *See* Compl., pp. 28-33, Prayer For Relief.  These attorney fees may be included in determining the amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees...such fees may be included in the amount in controversy"); *see also Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417-18 (9th Cir. 2018) (the amount in controversy includes all relief claimed at the time of removal to which Plaintiff would be entitled if she prevails.).  Additionally, the Ninth Circuit has confirmed that future attorneys' fees must be included in an amount in controversy calculation under CAFA. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

38.     "[I]t is well established the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'" *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *7 (N.D. Cal. Mar. 1, 2012) (*citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).

39.     Accordingly, for purposes of this removal only, IKEA conservatively assumes that attorneys' fees in this matter would amount to at least 25% of Plaintiff's recovery on the claim for unpaid minimum wage and overtime wages, amounting to **$304,987.19** (calculated as: 25% x $1,219,948.76 in unpaid minimum and overtime wages).

40.     **Total Amount in Controversy for Just Five Causes of Action.**  Based solely on the five causes of action considered above and attorneys' fees, the class-wide amount in controversy, conservatively estimated, is at least **$7,262,241.40**, as summarized in the following table:

| Claim | Amount in Controversy |
|---|---|
| Claims #1-2: Unpaid Minimum and Overtime Wages | $1,219,948.76 |
| Claim #3: Failure to Provide Meal Periods | $3,253,196.70 |
| Claim #4: Failure to Provide Rest Periods | $1,626,598.35 |
| Claim # 5: Waiting Time Penalties | $857,510.40 |
| Attorneys' Fees (on Claims #1-2) | $ 304,987.19 |
| **Total:** | **$7,262,241.40** |

41. This amount in controversy satisfies the standard for removal. *Dart Cherokee*, 574 U.S. at 81 ("[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold; the notice need not contain evidentiary submissions.").

42. **Amount in Controversy for Remaining Causes of Action.** The amount in controversy well exceeds the $5,000,000 CAFA threshold, without taking into account hourly, non-exempt employees employed by Defendant Volt Management Corp. in California during the four-year period prior to the commencement of this action, and without taking into account of Plaintiff's additional causes of action for alleged failure to provide accurate itemized wage statements, failure to timely pay wages during employment, and unfair competition. Even though IKEA has not assigned any particular amounts to those causes of action, assignment of any sum only further increases the amount in controversy in excess of $5,000,000.

43. Accordingly, removal of this action is proper under CAFA.

## CORPORATE DISCLOSURE

44. Pursuant to Federal Rule of Civil Procedure 7.1, IKEA is filing a Disclosure Statement concurrently with this Notice of Removal.

## NOTICE

45. As required by 28 U.S.C. § 1446(d), IKEA is providing written notice of the filing of this Notice of Removal to all parties and is filing a copy of this Notice of Removal with the Clerk of the Superior Court of the State of California in and for the County of Kern.

Respectfully submitted,

Dated: February 1, 2022  **BAKER & HOSTETLER LLP**

By: */s/ Shareef S. Farag*
SHAREEF S. FARAG
VARTAN S. MADOYAN
VIVIAN Y. SHEN

*Attorneys for Defendant*
IKEA DISTRIBUTION SERVICES, INC.

**PROOF OF SERVICE**

I am employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 11601 Wilshire Boulevard, Suite 1400, Los Angeles, CA 90025-0509. On February 1, 2022, I served a copy of the within document(s): **NOTICE OF REMOVAL OF ACTION TO FEDERAL COURT**

☑ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Los Angeles, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing document(s) listed above in the care and custody of Ace Attorney Services for personal delivery to the person(s) at the address(es) set forth below. Proof of service to be filed after completion of service.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

| | |
|---|---|
| Joseph Lavi, Esq.<br>Vincent C. Granberry, Esq.<br>**LAVI & EBRAHIMIAN, LLP**<br>8889 W. Olympic Boulevard, Suite 200<br>Beverly Hills, California 90211<br>Telephone: (310) 432-0000<br>Facsimile: (310) 432-0001<br>E-Mail: jlavi@lelawfirm.com<br>E-Mail: vgranbemy@lelawfirm.com<br>E-Mail: whteam@lelawfirm.com | *Attorneys for Plaintiff*<br>*BEATRIZ RAMIREZ on behalf of*<br>*herself and others similarly situated* |
| Sahag Majarian II, Esq.<br>**LAW OFFICE OF SAHAG MAJARIAN II**<br>18250 Ventura Boulevard<br>Tarzana, California 91356<br>Telephone: (818) 609-0807<br>Facsimile: (818) 609-0892<br>E-Mail: sahagii@aol.com | *Attorneys for Plaintiff*<br>*BEATRIZ RAMIREZ on behalf of*<br>*herself and others similarly situated* |

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on February 1, 2022, at Los Angeles, California.

*/s/ Carmen Torres-Smith*
Carmen Torres-Smith